No. 25-1986

*In the*

# United States Court of Appeals
*for the*
# Eighth Circuit

---

TIM TAYLOR, on behalf of himself and others similarly situated; and BRYCE BAKER, on behalf of himself and others similarly situated;

Plaintiffs-Appellees,

vs.

JBS FOODS USA; TYSON FOODS, INC.; CARGILL MEAT SOLUTIONS CORP.; and NATIONAL BEEF PACKING COMPANY, LLC,

Defendants-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
Case No. 3:23-CV-3031-ECS, Hon. Eric C. Schulte

---

### DEFENDANTS-APPELLANTS' REPLY BRIEF

---

AARON D. VAN OORT
TYLER A. YOUNG
90 South Seventh Street
2200 Wells Fargo Center
Minneapolis, MN 55402
612 766 8610

MARTIN J. DEMORET
801 Grand Avenue, Suite 3100
Des Moines, IA 50309
515 447 4709

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I. The FMIA Expressly Preempts Plaintiffs' Claims....................................2

    A. USDA's "Product of the USA" standard is a requirement "made under" the FMIA and thus carries preemptive effect. ............................................4

    B. The FMIA's grant of concurrent enforcement jurisdiction to the States does not authorize using state-law claims to review USDA's actions. ......................8

    C. *Loper Bright* does not undermine the case for express preemption. .................13

II. *Amici Curiae*'s Additional Arguments Are Unavailing. ......................................16

III. Conflict Preemption Applies, Even If Express Preemption Does Not .........21

CONCLUSION ...................................................................................................23

Appellate Case: 25-1986    Page: 2    Date Filed: 09/10/2025 Entry ID: 5556522

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Alaska v. U.S. Dep't of Transp.*,
     868 F.2d 441 (D.C. Cir. 1989) ......................................................................17

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
     458 U.S. 592 (1982) ......................................................................................17

*Arizona v. Biden*,
     40 F.4th 375 (6th Cir. 2022) ........................................................................17

*Armour & Co. v. Ball*,
     468 F.2d 76 (2d Cir 1972) ................................................................4, 12, 13

*Backus v. Biscomerica Corp.*,
     No. 16-CV-03916-HSG, 2017 WL 1133406 (N.D. Cal. Mar. 27, 2017).................22

*Barnes v. Campbell Soup Co.*,
     No. C 12-05185 JSW, 2013 WL 5530017 (N.D. Cal. July 25, 2013) ...........7

*Biden v. Nebraska*,
     600 U.S. 477 (2023) ......................................................................................19

*Brougham v. Blanton Mfg. Co.*,
     249 U.S. 495 (1919) ......................................................................................16

*Brower v. Campbell Soup Co.*,
     243 F. Supp. 3d 1124 (S.D. Cal. 2017) ......................................................7, 9

*Calzone v. Summers*,
     942 F.3d 415 (8th Cir. 2019) ........................................................................22

*Chong v. Hormel Foods Corp.*,
     No. LA CV19-10944 JAK, 2021 WL 11732982 (C.D. Cal. Apr. 13,
     2021) ..............................................................................................................7

*Cohen v. ConAgra Brands, Inc.*,
     16 F.4th 1283 (9th Cir. 2021) .........................................................7, 9, 10, 17

*Craten v. Foster Poultry Farms Inc.*,
     305 F. Supp. 3d 1051 (D. Ariz. 2018) ...........................................................7

Appellate Case: 25-1986     Page: 3     Date Filed: 09/10/2025 Entry ID: 5556522

*E. Iowa Plastics, Inc. v. PI, Inc.*,
889 F.3d 454 (8th Cir. 2018) ............................................................ 3, 22

*Edwards v. Johnsonville LLC*,
23 C 1107, 2024 WL 686925 (N.D. Ill. Feb. 1, 2024) ...................................7

*Fed. of Homemakers v. Butz*,
466 F.2d 462 (D.C. Cir. 1972) .......................................................11

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ...............................................................19

*Gibbons v. Ogden*,
22 U.S. 1 (1824)...................................................................16

*Hillman v. I.R.S.*,
263 F.3d 338 (4th Cir. 2001) .......................................................22

*Hines v. Davidowitz*,
312 U.S. 52 (1941) .................................................................21

*Kenney v. Glickman*,
96 F.3d 1118 (8th Cir. 1996) .......................................................11

*Kentucky v. Biden*,
23 F.4th 585 (6th Cir. 2022) ...........................................17, 18, 19

*Kuenzig v. Hormel Foods Corp.*,
505 Fed App'x 937 (11th Cir. 2013) ............................................7, 9

*La Vigne v. Costco Wholesale Corp.*,
284 F. Supp. 3d 496 (S.D.N.Y. 2018) ..............................................7

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......................................... 13, 14, 15, 16

*Massachusetts v. E.P.A.*,
549 U.S. 497 (2007) .........................................................17, 18, 19

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ...............................................................10

*Meaunrit v. ConAgra Foods, Inc.*,
No. C 09-02220 CRB, 2010 WL2867393 (N.D. Cal. July 20, 2010) .........................7

iii

*Missouri v. Biden*,
    576 F. Supp. 3d 622 (E.D. Mo. 2021) ...................................................................18

*N.L.R.B. v. Bell Aerospace Co. Div. of Textron*,
    416 U.S. 267 (1974) .........................................................................................5

*Nat'l Meat Ass'n v. Harris*,
    565 U.S. 452 (2012) .........................................................................................3

*Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*,
    766 F.2d 228 (6th Cir. 1985) ...........................................................................17

*Phelps v. Hormel Foods Corp.*,
    244 F. Supp. 3d 1312 (S.D. Fla. 2017) ...........................................................7, 9

*Rath Packing Co. v. Becker*,
    357 F. Supp. 529 (C.D. Cal. 1973) ..................................................................13

*Rath Packing Co. v. Becker*,
    530 F.2d 1295 (9th Cir. 1975) ...........................................................................4

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) .......................................................................................13

*Roth v. U.S. Dep't of Just.*,
    642 F.3d 1161 (D.C. Cir. 2011) .......................................................................22

*Schaffner v. Monsanto Corp.*,
    113 F.4th 364 (3d Cir. 2024) ...........................................................................16

*Sec. & Exch. Comm'n v. Chenery Corp.*,
    332 U.S. 194 (1947) .........................................................................................5

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*,
    145 S. Ct. 1497 (2025) ...............................................................................14, 16

*Stokes v. Stirling*,
    64 F.4th 131 (4th Cir. 2023) .........................................................................3, 22

*In re Suboxone (Buprenorphine/Naloxone) Film Prods. Liab. Litig.*,
    761 F. Supp. 3d 1069 (N.D. Ohio 2024) ..........................................................15

*Swift & Co., Inc. v. Walkley*,
    369 F. Supp. 1198 (S.D.N.Y. 1973) .............................................................12, 13

*Texas v. United States,*
126 F.4th 392 (5th Cir. 2025) .........................................................19

*Texas v. United States,*
809 F.3d 134 (5th Cir. 2015) ..........................................................17

*Thornton v. Tyson Foods, Inc.,*
28 F.4th 1016 (10th Cir. 2022) .............................................7, 9, 10, 24

*Thornton v. Tyson Foods, Inc.*
482 F. Supp. 3d 1147 (D.N.M. 2020) ................................................7

*Trazo v. Nestlé USA, Inc.,*
No. 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)......................7

*United States v. Ford,*
184 F.3d 566 (6th Cir. 1999) ..........................................................22

*Washington v. U.S. Food & Drug Admin.,*
108 F.4th 1163 (9th Cir. 2024) ........................................................17

*Webb v. Trader Joe's Co.,*
418 F. Supp. 3d 524 (S.D. Cal. 2019) ................................................7

*Webb v. Trader Joe's Co.,*
999 F.3d 1196 (9th Cir. 2021) .......................................................7, 9

*Wyeth v. Levine,*
555 U.S. 555 (2009) ....................................................................19

## Statutes, Rules & Regulations

21 U.S.C. § 601................................................................... 4, 16

21 U.S.C. § 602 ......................................................................4

21 U.S.C. § 606......................................................................16

21 U.S.C. § 607(d)................................................................8, 9, 15

21 U.S.C. § 661......................................................................22

21 U.S.C. § 678...............................................................*passim*

9 C.F.R. § 412.1......................................................................6

v

9 C.F.R. § 412.2......................................................................................................6

89 FR 19470 (March 18, 2024)................................................................................22

78 FR 66826-01 (Nov. 7, 2013)................................................................................6

60 FR 67444-01 (Dec. 29, 1995)................................................................................6

**Other Authorities**

Food Standards and Labeling Policy Book……………………………………...5, 6, 7

U.S. Const. Article I, § 8, Cl. 3 ................................................................................16

vi

# INTRODUCTION

Plaintiffs spend most of their brief arguing about substance, but this appeal is about process—the process for deciding what can be said on meat labels. In the Federal Meat Inspection Act (FMIA), Congress established a federal process under which USDA sets uniform, national labeling requirements for all meat sold in interstate commerce, and any state-law requirements "in addition to, or different than" the USDA-established requirements are preempted. 21 U.S.C. § 678.

Plaintiffs brought this case because they disagree with the requirements USDA set for using "Product of the USA" on beef labels. They claim that those requirements are an impermissible application of the FMIA's misbranding standard. That is a substantive argument Plaintiffs may make. But they cannot make it in this lawsuit, because they sued the wrong defendants under the wrong law. To challenge USDA's "Product of the USA" requirements, Plaintiffs would need to bring an Administrative Procedure Act (APA) suit against USDA and attempt to demonstrate that USDA exceeded its authority or acted arbitrarily and capriciously. But this is not an APA suit against USDA. Nor is it a federal suit to enforce the FMIA, because Congress did not create a private right of action. It is a South Dakota state-law suit against private Defendants.

Plaintiffs and their State *amici curiae* argue that, in this posture, a court can hold that private defendants who followed USDA's requirements and used USDA-approved labels nonetheless violated state law, if the court concludes that USDA did not correctly

1

apply the FMIA. That is completely wrong. USDA's requirements and label approvals are in-force, controlling federal law. They have not been challenged, they have not been vacated or reversed, and they cannot be challenged in any state-law suit, much less one where USDA is not present. Hence, they expressly preempt Plaintiffs' state-law claims.

The *amici curiae* States emphasize that they have concurrent enforcement jurisdiction, but their only jurisdiction is to enforce the federal requirements, not to set their own requirements. And to be clear, by arguing that state law prohibited Defendants from following USDA's "Product of the USA" requirements and using labels it approved, they are using state law to set their own requirements. The States, just like private plaintiffs, can challenge USDA's actions under the APA. But they cannot contradict USDA's requirements while those requirements stand. This is the process Congress established to secure nationwide uniformity. If the States' position were allowed, state law could be used to override USDA labels and create the very patchwork of labeling requirements that Congress sought to avoid.

This Court should reverse and remand with instructions to dismiss Plaintiffs' claims with prejudice because they are preempted by the FMIA.

## ARGUMENT

### I. The FMIA Expressly Preempts Plaintiffs' Claims.

Defendants' opening brief established that the FMIA's express preemption provision controls this case and preempts Plaintiffs' state-law claims because they seek to impose different requirements for "Product of the USA" labels than the ones USDA

2

established under the FMIA. (Appellants' Br. 19-20.) Plaintiffs' brief largely ignores the express preemption clause and either affirmatively concedes or fails to dispute every element of preemption, thus implicitly conceding them. *See E. Iowa Plastics, Inc. v. PI, Inc.*, 889 F.3d 454, 459 (8th Cir. 2018) (appellee conceded arguments in appellant's brief by failing to "make a sufficiently specific, affirmative argument" in response as required by Fed. R. App. 28(a)(8)(A) and 29(b)); *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) ("Even appellees waive arguments by failing to brief them.") (citations and quotation marks omitted).

Plaintiffs acknowledge *both* that requirements "made under" the FMIA have preemptive effect *and* that the FMIA authorizes USDA to make requirements to prevent false and misleading labels. (Appellees' Br. 13-15.) They do not dispute that USDA's "Product of the USA" standard is a requirement "made under" the FMIA, that Defendants' beef products satisfy that requirement, and that USDA approved Defendants' labels. (*Id.* at 1-2, 12.) They also do not dispute that their state-law claims seek to impose a different requirement for "Product of the USA" labels from the one USDA made. (*Id.* at 19-21.) Nor, finally, do they dispute that the FMIA's express "preemption clause sweeps widely [and] prevents a State from imposing additional or different—even if non-conflicting—requirements" for labeling. *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459 (2012). The conclusion that follows from these concessions is that Plaintiffs' state-law claims are expressly preempted.

3

Instead of addressing the FMIA's express preemption clause, Plaintiffs offer three basic arguments for why it should not be applied. None is persuasive.

### A. USDA's "Product of the USA" standard is a requirement "made under" the FMIA and thus carries preemptive effect.

First, Plaintiffs claim that the method USDA used to set requirements for using "Product of the USA" labels is too "informal" to have preemptive effect, thus leaving States free to set their own requirements. (Appellees' Br. 28-29.) This is incorrect because USDA's requirements were "made under" the FMIA and thus fall directly within the express preemption provision.

The FMIA's express preemption provision applies to all "labeling . . . requirements" that are "in addition to, or different than, those **made under this chapter**." 21 U.S.C. § 678 (emphasis added). It does not limit preemption to requirements "made by" this chapter. Rather, it extends preemption to requirements "made under" this chapter. Made by whom? By "the Secretary of Agriculture of the United States or his delegate," 21 U.S.C. § 601(a), to whom Congress gave the authority to "prescribe" requirements to avoid "false or misleading" labeling, §§ 607(c) and (d), and to make "conclusive" determinations about particular labels' compliance, subject to direct judicial review, § 607(e). Courts have thus long recognized that USDA has the authority to set the requirements for what is false or misleading, and hence "misbranded," § 601(n). *See Rath Packing Co. v. Becker*, 530 F.2d 1295, 1313-15 (9th Cir. 1975) (citing 21 U.S.C. §§ 601(n), 602, and 678 and legislative history); *Armour & Co. v.*

4

*Ball*, 468 F.2d 76, 83 (2d Cir 1972) (the FMIA "manifests a congressional intent to prescribe uniform standards of identity and composition" prescribed by USDA); *see generally* Appellants' Br. 17-18 (citing additional case law and legislative history).

The labeling requirement at issue here is USDA's requirement that a beef product must be "processed in the U.S." to be labeled "Product of the USA." (Appellants' Br. 9 (quoting Labeling Policy Book at 147).). This requirement was "made under" the FMIA by USDA and hence carries preemptive force under 21 U.S.C. § 678.

Plaintiffs note that the Labeling Policy Book was not promulgated through notice-and-comment rulemaking and argue that it therefore should receive no deference. (Appellees' Br. 37.) But the issue here is not deference, it is preemptive effect—and USDA's requirements expressed in the Labeling Policy Book are entitled to that effect because they were "made under" the FMIA. The FMIA does not require USDA to use notice-and-comment rulemaking for every label requirement. *See* 21 U.S.C. § 678. Such a process would be entirely impractical, given the volume of labels USDA must review and the need for timeliness. (*Infra* at 6-7.) And under the APA, agencies have broad discretion to establish requirements through a variety of actions, including adjudication, informal notice-and-comment rulemaking, or formal on-the-record rulemaking. *See N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 290-94 (1974); *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 202-03 (1947). Thus, courts have given preemptive effect to policy memos, as well as notice-and-comment-backed rules. (Appellants' Br. 16.)

5

USDA exercised its FMIA authority by promulgating regulations that establish a process for preapproving labels based on the contents of the Labeling Policy Book. 9 C.F.R. § 412.1. The Labeling Policy Book defines numerous labeling terms, including "Product of the USA." (*See generally* Labeling Policy Book.) Its list of definitions "is a composite of [USDA's] policy and day-to-day labeling decisions." (*Id.* at 3.) The Labeling Policy Book is "to be used in conjunction with the Meat and Poultry Inspection Regulations" and is published so manufacturers can "prepare product labels that are truthful and not misleading." (*Id.* at 2-3.) When meat labels "bear all mandatory labeling features . . . in accordance with the Federal regulations and **do not** bear special statements and claims as defined in § 412.1(e)"—meaning statements and claims "not defined in the Federal meat and poultry inspections regulations or the Food Standards and Labeling Policy Book," *id.* § 412.1(e)(1)(i)—the labels are generically preapproved. *Id.* § 412.2(b) (emphasis added). When labels **do** make "special statements and claims," a sketch must be submitted for approval. *Id.* § 412.1(c).[1]

---

[1] Notably, Plaintiffs do not dispute that the FMIA authorizes the regulatory label preapproval program USDA promulgated, including generic and sketch approval. USDA has used generic approval for nearly 30 years, *FSIS, Prior Labeling Approval System,* 60 FR 67444-01, 67444-45 (Dec. 29, 1995) (hereinafter, "*Prior Labeling Approval System*"), and the regulations authorizing the use of definitions in the Labeling Policy Book to generically approve labels were promulgated more than a decade ago. *FSIS, Prior Label Approval System: Generic Label Approval,* 78 FR 66826-01, 66827-28 (Nov. 7, 2013) (hereinafter, "*Generic Label Approval*"). USDA's regulatory commentary indicates that no State submitted comments questioning the legality of USDA's authority to promulgate those regulations. *Id.* This is unsurprising given the compelling reasons USDA had for promulgating its label preapproval regulations. *Prior Labeling Approval System*, 60 FR 67444-01, 67445-51 (noting USDA reviews hundreds of thousands of labels each year

6

Because of the regulatory structure promulgated by USDA at Congress's direction, courts have unanimously agreed that USDA's preapproval of a label preempts state-law claims alleging the label should contain different or additional information. *E.g.*, *Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1024 (10th Cir. 2022); *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1288 (9th Cir. 2021); *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021); *Kuenzig v. Hormel Foods Corp.,* 505 Fed App'x 937 (11th Cir. 2013) (unpublished); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1316-18 (S.D. Fla. 2017); *Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1129 (S.D. Cal. 2017).[2] When USDA preapproves a label, "the agency is deciding that it is *not* false or misleading under the [FMIA], and thus the agency imposes a federal requirement within the meaning of [§ 678]." *Cohen*, 16 F.4th at 1288 (citations and internal quotation marks omitted).

---

and concluding that its generic approval program would streamline label review, reduce costs, and let the agency focus "on using resources to reduce actual risks to the public"); *Generic Label Approval*, 78 FR 66826, 66833-34 (concluding that incorporating the Labeling Policy Book's definitions would reduce agency and industry costs and expand product options and "market efficiency" for consumers while relieving the burdens on establishments to "hire experts or additional staff to comply with FSIS's labeling requirements").

[2] *See also Edwards v. Johnsonville LLC*, 23 C 1107, 2024 WL 686925, at *4 (N.D. Ill. Feb. 1, 2024); *Chong v. Hormel Foods Corp.*, No. LA CV19-10944 JAK, 2021 WL 11732982, at *8 (C.D. Cal. Apr. 13, 2021); *Thornton v. Tyson Foods, Inc.* 482 F. Supp. 3d 1147, 1159 (D.N.M. 2020); *Webb v. Trader Joe's Co.*, 418 F. Supp. 3d 524, 530 (S.D. Cal. 2019); *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1060–61 (D. Ariz. 2018); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 507–11 (S.D.N.Y. 2018); *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, at *5 (N.D. Cal. July 25, 2013); *Trazo v. Nestlé USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *7–8 (N.D. Cal. Aug. 9, 2013); *Meaunrit v. ConAgra Foods, Inc.*, No. C 09-02220 CRB, 2010 WL 2867393, at *7 (N.D. Cal. July 20, 2010).

Appellate Case: 25-1986     Page: 14     Date Filed: 09/10/2025 Entry ID: 5556522

In sum, there is no basis to Plaintiffs' argument that USDA's "Product of the USA" requirements are too informal to have preemptive effect under the FMIA.

## B. The FMIA's grant of concurrent enforcement jurisdiction to the States does not authorize using state-law claims to review USDA's actions.

Plaintiffs' second argument is a frontal attack on the FMIA's preemption provision. They argue that the grant of concurrent enforcement jurisdiction to the States means that state-law claims provide an alternative channel for obtaining judicial review of USDA's labeling decisions. Or as they put it, "[s]ometimes, the Secretary of Agriculture gets it wrong," and "concurrent jurisdiction helps protect the public in such situations." (Appellees' Br. 26.) The first part of Plaintiffs' framing is correct: USDA is not infallible. But the second part is entirely wrong: USDA's actions can be reviewed only under federal law in a case brought against USDA, not under state law in a case brought against a private party.

To make their argument, Plaintiffs misread the FMIA's false-labeling and concurrent-jurisdiction provisions and ignore its express-preemption provision. Plaintiffs start by arguing that 21 U.S.C. § 607(d) sets two prerequisites for meat labeling. Labels may be used "which are not false or misleading **and** which are approved by the Secretary." 21 U.S.C. § 607(d) (emphasis added); (Appellees' Br. 15.) So far, so good. But then Plaintiffs argue that this means States can declare something to be "false

8

or misleading" under their law, even if USDA provides otherwise under federal law. *Id.* That is where the argument goes wrong, for multiple reasons.

First, the interpretive canon against surplusage does not support reading § 607(d) to allow States to contradict USDA's requirements. (Appellees' Br. 33.) Section 607(d) does indeed impose two prerequisites on meat labels: they must not be false or misleading, **and** they must be approved by the Secretary. Hence, meat sellers cannot simply review their own labels, determine that they are true and not misleading, and put them on the market. A label must first be "approved by the Secretary," even if it is accurate and non-misleading. *Thornton*, 28 F.4th at 1021. Reading § 607(d) this way—to establish both a substantive standard and a pre-approval process for enforcing it—gives full meaning to both of its requirements. Every court to have previously considered the issue agrees with this interpretation of Section 607(d). *E.g.*, *Thornton*, 28 F.4th at 1024; *Cohen*, 16 F.4th at 1288; *Webb*, 999 F.3d at 1204; *Kuenzig*, 505 Fed App'x 937; *Phelps*, 244 F. Supp. 3d at 1316-18; *Brower*, 243 F. Supp. 3d at 1129. Plaintiffs' argument that, because § 607(d) contains two requirements, it therefore must be read to allow States to set up competing labeling standards with USDA is a non sequitur.

Second, not only is Plaintiffs' interpretive argument a non sequitur, but it needlessly makes § 607(d) contradict the express preemption provision of § 678, and it makes the preemption and concurrent-jurisdiction provisions of § 678 contradict each other. All of those provisions can be harmonized by reading them to provide that: (1) USDA's labeling requirements can be reviewed by courts in suits brought under the

9

APA for consistency with the FMIA, as § 607(e) and the APA provide; but (2) as long as USDA's requirements stand, state law cannot impose any requirements "in addition to, or different than, those made under this chapter" by USDA, as § 678 provides.

Plaintiffs argue that, if USDA's requirement were made improperly, they do not carry preemptive effect. But that is not what § 678 provides. **All** requirements "made under" the FMIA carry preemptive effect. States cannot escape preemption by arguing that USDA requirements only have preemptive effect if they are correct. *Thornton*, 28 F.4th at 1024; *Cohen*, 16 F.4th at 1288 (FMIA and PPIA expressly preempt state-law claims alleging USDA's "decision to approve the label was wrong"). This process would produce pandemonium, with courts and juries reaching different and contradictory positions under different States' laws. It is exactly the process that Congress rejected. USDA's requirements can be reviewed directly under federal law, but they cannot be contradicted by state law—and to say that a state-law claim brought against a private party is "reviewing" USDA's requirements is simply a misnomer. A claim brought in that posture can only disagree with USDA's requirements, not review them, because no matter how the claim is resolved, the decision will have no effect on USDA.[3]

---

[3] Because Plaintiffs' claims are brought under state law and Congress decided not to allow private enforcement actions under the FMIA (*see* Appellants' Br. 25-26), judicial review of USDA's actions is not available in this private-plaintiff suit. *Compare McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 156 (2025) (noting the "default principle that parties in [federal] enforcement proceedings can challenge an agency's interpretation of a statute").

Plaintiffs further argue that States have authority to prohibit at least some labels that USDA approved because "certain interpretations of the term 'misbranded'—including whether a label is false or misleading—are not 'committed by Congress to agency discretion.'" (Appellees' Br. 25 (quoting *Kenney v. Glickman*, 96 F.3d 1118, 1125 (8th Cir. 1996).) In so arguing, Plaintiffs completely misapply *Kenney's* holding. *Kenney* was an APA case in which the Secretary of Agriculture contended that certain decisions about the tolerance of process defects in meat and the water-retention policy for poultry were committed by Congress solely to the Secretary's discretion and were thus unreviewable by the federal courts. *Kenney*, 96 F.3d at 1121-22. This Court rejected the Secretary's argument because USDA was not making enforcement decisions and there was "law to apply," including the FMIA's and PPIA's prohibitions on "misbranding." *Id.* at 1123-25. Hence, USDA did not have absolute discretion, and its "actions" were reviewable under federal law through challenges properly made under the APA. *Id.* at 1124-25. *Kenney* illustrates the correct way to challenge a USDA action—through a suit against it brought under the APA. *Kenney* never mentions the FMIA's preemption clause because state-law claims were not raised, and hence § 678 was inapplicable.

This Court has never held in *Kenney* or any other case that USDA's actions can be collaterally attacked by private suits brought against private defendants under **state** law. No court has held that. Like *Kenney,* all the cases Plaintiffs cite challenging the legality of USDA's actions or inaction pertaining to the federal labeling requirements were brought directly against the agency under federal law. *See Fed. of Homemakers v.*

11

*Butz*, 466 F.2d 462 (D.C. Cir. 1972) (direct action against USDA challenging agency's labeling requirements); *Armour*, 304 F.2d 404 (same).

The *amici curiae* note that a 52-year-old federal district court case allowed a state to ban a product with a label that USDA had approved. *Swift & Co., Inc. v. Walkley*, 369 F. Supp. 1198 (S.D.N.Y. 1973). But that was only because USDA participated in that case and admitted it had not followed its own regulations. At issue was an ALL AMERICAN FUN LINKS product. Under USDA's labeling regulations, the product had to be labeled an "imitation" frankfurter because it contained 6.8% soy protein and 23.2% water, and all products containing more than 2% isolated soy protein and 10% added water had to be labeled "imitation." *Id.* at 1199. In the district court, a "Department of Agriculture Official" submitted an affidavit admitting that the agency had not followed its own regulations and had approved the label based on a "view expressed by the White House Conference" that agencies should consider using a different standard for "imitation" meat. *Id.* at 1200. USDA further acknowledged it approved the label "in error." *Id.* Based on USDA's participation and admissions, the court held that the plaintiff's state-law suit against the mislabeled ALL AMERICAN FUN LINKS was not preempted. *Id.*

Here, unlike in *Swift*, USDA has not participated in this suit and has not admitted that it approved Defendants' labels in error under its regulations. To the contrary, USDA is not a party, it has not submitted any statements, and Defendants' labels undisputedly **complied** with USDA's "Product of the USA" regulations. (*Supra* at 3.)

12

As the *Swift* court itself recognized, States have no concurrent jurisdiction to prohibit meat labels in such circumstances. *Swift*, 369 F. Supp. at 1201. In fact, it distinguished the preemption rulings in *Armour*, 468 F.2d 76, and *Rath Packing Co. v. Becker*, 357 F. Supp. 529 (C.D. Cal. 1973), because those cases involved state labeling requirements that were "in addition to or different than the federal standards under the" FMIA, and thus "the state had no concurrent jurisdiction under section 678" irrespective of whether it believed the labels were misbranded. *Id.* The decision in *Swift* thus supports preemption here. If it provided otherwise, it would be incorrect.

In sum, Plaintiffs and *amici curiae* disagree with the uniform, national process that Congress created for establishing requirements for meat labels. But process limitations of this sort are "exactly what a pre-emption clause . . . does by its terms." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326 (2008). Congress left no room for private litigants to sue establishments who use meat labels USDA preapproves.

### C.    *Loper Bright* does not undermine the case for express preemption.

Plaintiffs' third argument is that the Supreme Court's *Loper Bright* decision undermines the case for preemption. (Appellees' Br. 17-19, 34-37.) But *Loper Bright* does not apply because (1) this is not an APA suit challenging agency action and (2) USDA's "Product of the USA" action is not statutory interpretation but agency policymaking.

The core holding of *Loper Bright* is that courts "need not[,] and under the APA may not[,] defer to an agency interpretation of the law simply because a statute is

13

ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024). But as demonstrated above, this is not an APA case, and the USDA is not a party. Plaintiffs chose not to challenge USDA's "Product of the USA" requirements or its approval of Defendants' labels under those requirements. They chose instead to bring state-law claims seeking to impose different requirements. In this posture, the correctness of USDA's actions is not presented for review. *Loper Bright* thus has no application here.

But even if USDA's actions were subject to review in this case, they would be reviewed under the deferential arbitrary-and-capricious standard because they involve agency policymaking, not statutory interpretation. The central substantive question Plaintiffs raise—whether it is misleading to label a beef product as a "Product of the USA" if the beef is processed in the United States but the cattle are born or raised elsewhere—is a classic "policy question" bound up in "factfinding" to which courts must defer, even under *Loper Bright*. (Appellants' Br. 33-35 (citing *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497 (2025).)

Plaintiffs all but concede this. Below, they argued that the "level of deception . . . is a factual determination that ultimately must be determined by the fact finder in the case[.]" (App. 378; R. Doc. 30 at 29.) They now agree that "[i]n a factual dispute, federal labeling law wins because of preemption principles." (Appellees' Br. 34.) And they even acknowledge that USDA's choice of requirements was a "policy judgment" about the proper use of a "Product of the USA" label on meat. (Appellees' Br. 37.) This is all correct, and it would compel a deferential standard of review in a proper APA action.

14

Plaintiffs' contrary arguments that this appeal turns on three "legal questions" are either beside the point or incorrect. (Appellees' Br. 1.) While the first two questions Plaintiffs identify—about preemption and the meaning of 21 U.S.C. 607(d)—are indeed legal questions, USDA never addressed them, so there is no agency interpretation of law to review. *See In re Suboxone (Buprenorphine/Naloxone) Film Prods. Liab. Litig.*, 761 F. Supp. 3d 1069, 1086 (N.D. Ohio 2024) ("[*Loper Bright*] says little, if anything, about preemption doctrine [because] preemption involves determining the intent of Congress, not an agency."). And the third question—what the standards should be for using "Product of the USA"—is the exact sort of agency policy determination that enjoys deference under *Loper Bright*. (*See* Appellants' Br. 33-35.)

Plaintiffs cite literally no authority to support their claim that "the definition of 'false or misleading' is a question of law for the courts." (*See* Appellees' Br. 35.) Instead, they again criticize the formality of USDA's approval of Defendants' labels. (*See id.* at 37.) But, as explained above, USDA correctly approved Defendants' labels under its properly promulgated regulatory scheme. Moreover, the degree of "formality" of agency action is not what divides legal questions from policy ones, just as it is not what grants an action preemptive force. That line depends on the statute at issue. "Some statutes," for example, "expressly delegate to an agency the authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 394. Under other statutes, agencies may "regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility[.]" *Id.* (citations and internal quotation marks omitted). Here,

15

USDA enjoys both forms of discretionary authority: (1) the FMIA "specifically provides that the Secretary may prescribe labeling requirements," and (2) the broad term "misbranded" gives USDA discretion to set labeling requirements based on its subject matter expertise and findings of fact. (Appellants' Br. 6, 33-35 (citations omitted).) Whether, and under what conditions, a meat manufacturer may use a "Product of the USA" label is thus squarely within USDA's discretion, and this Court should not "substitute its judgment for that of the agency." *Seven Cnty. Infrastructure Coal.*, 145 S. Ct. at 1513; *see Schaffner v. Monsanto Corp.*, 113 F.4th 364, 381 n.9 (3d Cir. 2024) (reaching a similar conclusion under FIFRA after *Loper Bright*).

## II. *Amici Curiae*'s Additional Arguments Are Unavailing.

*Amici* States attempt to add a constitutional dimension to Plaintiffs' arguments, suggesting that a ruling for Defendants would intrude upon the "historic police powers of the states." (Amicus Br. 5.) Nothing could be further from the truth.

First, this is not a case about an area of traditional state power. (*Contra* Amicus Br. 5.) This case is about the process for determining *federal* standards for products subject to *federal* inspection before shipment in *interstate* commerce. (*See* Appellants' Br. 5-6); *see also* 21 U.S.C. §§ 601(h), 606; *Brougham v. Blanton Mfg. Co.*, 249 U.S. 495, 499 (1919)). That is an area the Constitution entrusts to Congress, U.S. Const. Art. I, Sec. 8, Cl. 3, not to the States, *Gibbons v. Ogden*, 22 U.S. 1, 194-97 (1824). And in the FMIA, Congress decided that uniform federal standards, developed by USDA, should govern

and that different or additional state standards should be preempted. *See e.g.*, *Cohen*, 16 F.4th at 1288 ("Congress granted a federal agency the authority to uniformly determine the standard for poultry mislabeling and to apply that standard to labels before they go to market.").

Second, the States are not left without a way to defend their interests. States, no less than private citizens, can use the APA to challenge the Secretary's determination that certain labels are not misleading. In addition to the States' interests as raisers of cattle, *see* Amicus Br. 3, federal law recognizes that States have sovereign and quasi-sovereign interests that can be vindicated in federal court. *See Massachusetts v. E.P.A.*, 549 U.S. 497 (2007); *Arizona v. Biden*, 40 F.4th 375, 385-86 (6th Cir. 2022) (Sutton, C.J.) (explaining that States "have more theories of injury available to them," even though they are not permitted to "bypass" proof of that injury). For example, a state has a "'sovereign interest' in the retention of its authority to 'exercise . . . sovereign power over individuals and entities within its jurisdiction,'" including "the power to create and enforce a legal code." *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1176 (9th Cir. 2024); *see Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600–02 (1982). Thus, "States have a sovereign interest to sue the United States when" the act of an agency "purports to preempt state law." *Kentucky v. Biden*, 23 F.4th 585, 598 (6th Cir. 2022); *see Washington*, 108 F.4th at 1176 (same); *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (same); *Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 232–33 (6th Cir. 1985) (same); *Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 442–

17

43 & n.1 (D.C. Cir. 1989) (same); *see also Missouri v. Biden*, 576 F. Supp. 3d 622, 630 (E.D. Mo. 2021) ("Preemption of a validly enacted state statute is an injury in fact, such that the state will not be able to enforce the statute."), *appeal voluntarily dismissed by federal officials*, No. 22-1104, 2023 WL 3862561 (8th Cir. June 7, 2023). And "States also have a recognized quasi-sovereign interest in the health and 'economic well-being' of their populaces." *Kentucky*, 23 F.4th at 599 (collecting cases). When the act of an agency allegedly intrudes upon these interests, by preempting state law or threatening the welfare of the State's people, States have both Article III standing and a cause of action under the APA. *Id.* at 598-99.

What is more, an APA challenge to the present rule is but one avenue for a State to assert its interests when it disagrees with a "requirement[] made under" the FMIA. States also may petition USDA to promulgate new federal rules, *see, e.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) (successful petition for review of denial of petition for rulemaking). Or they may pursue legislative change in Congress through their elected representatives. Both options were in fact used on the very issue in this case. (*See* Appellants' Br. 10-12.)

Although none of these avenues will result in an award of monetary damages against private parties that followed USDA's requirements, they all represent lawful, constitutional ways for States to dispute those requirements. What States may not do is ignore the Supremacy Clause, the Interstate Commerce Clause, and Congress's express directives under those Clauses by establishing requirements different from those made

18

under the FMIA. Of course, a different constitutional balance would be required if this were a case without an express preemption provision or any congressional intent to displace state regulation, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144-45 (1963) (cited by Amicus Br. 6), or a case where Congress chose to preserve state law, rather than preempt it, and left questions of fact and judgment to juries, rather than to an agency, *Wyeth v. Levine*, 555 U.S. 555, 574 (2009) (cited by Amicus Br. 6). But it is not.

Finally, *amici's* suggestion that invoking the APA would reduce States to "mere litigant[s]," (Amicus Br. 16), underplays the substantial victories *amici* and other States have achieved through APA actions. *See, e.g.*, *Texas v. United States*, 126 F.4th 392 (5th Cir. 2025) (successful APA action challenging DACA)*; Biden v. Nebraska*, 600 U.S. 477 (2023) (successful APA challenge to enjoin federal student loan forgiveness); *Kentucky*, 23 F.4th at 590 (successful APA challenge to federal contractors vaccine mandate); *id.*, 2022 WL 821474 (amicus brief for South Dakota and several other *amici* in support of Kentucky's challenge); *Massachusetts*, 549 U.S. 497. The federal courts have not been insensitive to States' interests or disrespectful of States' sovereignty.

The *amici* are also wrong to argue that the Court can or should disregard USDA's labeling requirements in a case where the agency is not a party and cannot defend itself. Regardless, there is ample reason to conclude USDA's labeling requirements were lawful and reasonable. USDA used its applicable definition of "Product of the USA" for decades before Congress temporarily enacted more restrictive COOL labeling.

19

(Appellants' Br. 9-10 (discussing USDA's historical requirements for "Product of the USA" labeling).) And when Congress repealed the more restrictive labeling requirements in the wake of international trade disputes and the World Trade Organization's sanctions order, USDA sensibly reinstated the "Product of the USA" labeling standard it had used without issue for decades. (*Id.* at 10-11.) USDA then applied that standard through its generic label approval requirements for nearly a decade. (*Id.*) None of the States claim they challenged USDA's requirement or tried to regulate "Product of the USA" differently than the agency did. Instead, they acquiesced to federal regulation of that beef label.

As Plaintiffs recognize, the FMIA's regulatory process worked when private stakeholders requested that USDA consider amending its regulatory requirements for "Product of the USA" labels. USDA studied the issue and requested public comment. Notably, none of the State *amici* participated in that regulatory process, and they do not claim they otherwise asked USDA to change how it regulated "Product of the USA" labels.

In March 2024, USDA issued a final rule announcing new labeling requirements for "Product of the USA." The agency expressly considered when the new requirements would take effect, and it concluded the balance of factors warranted using a January 1, 2026, compliance date. None of the *amici* challenged USDA's compliance date.

*Amici* make much of USDA's survey results and how participants interpreted "Product of the USA" in a vacuum. And they insist they must be allowed to "fix" the

20

agency's errors in developing and implementing labeling requirements. The fact that they never actually tried to regulate "Product of the USA" labels differently than USDA suggests they either did not believe the labels posed any issues worth addressing or recognized the FMIA expressly preempted them from prohibiting the labels.

This case does not pose any threat to federalism or state authority as *amici* suggest. Defendants simply ask the Court to apply Congress's intent and the FMIA's plain text by holding that the statute's express preemption clause prohibits States from imposing additional or contrary requirements on meat labels that USDA preapproved pursuant to its labeling requirements.

## III.   Conflict Preemption Applies, Even If Express Preemption Does Not.

Defendants explained in their opening brief that conflict preemption would bar this suit even if express preemption did not. (Appellants' Br. 38-39.) FSIS has "made" new requirements "under" the FMIA regarding country-of-origin labeling and has lawfully established that those requirements will take effect on January 1, 2026. Plaintiffs' attempt to prematurely enforce those new requirements creates "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), because it "would plainly frustrate Congress's objectives in establishing 'uniformity among the State programs and between the Federal and State programs,' . . . and in providing an orderly transition from old labeling requirements to new ones," (Appellants' Br. 40 (citing 21 U.S.C. § 661(1), (3), (4), Final

21

Rule, 89 Fed. Reg. 19470-01, 19486; *Backus v. Biscomerica Corp.*, No. 16-CV-03916-HSG, 2017 WL 1133406, at *2 (N.D. Cal. Mar. 27, 2017).) That provides an independent reason to conclude that Plaintiffs' claims are preempted. *See id.*

Neither the Plaintiffs nor their *amici* address conflict preemption. They do not contest that having some states prematurely enforce the upcoming rule change would frustrate Congress's objectives under the statute. They do not contest that conflict preemption is appropriate in such a situation. Appellate Rule 28 requires appellees, no less than appellants, to provide their "contentions and reasons for them" in their principal brief, *see* Fed R. App. P. 28(a)(8), (b), and thus appellees took "the risk of abandonment of an argument" when they "fail[ed] to raise a substantive legal argument;" *Hillman v. I.R.S.,* 263 F.3d 338, 343 n.6 (4th Cir. 2001). Plaintiffs have, therefore, forfeited any argument on conflict preemption, and this Court may rule in favor of Defendants on that basis. *See E. Iowa Plastics*, 889 F.3d at 459; *Stokes*, 64 F.4th 131 ("[A] party's failure to raise or discuss an issue in its appellate brief is to be deemed an abandonment of that issue . . . . Even appellees waive arguments by failing to brief them."); *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1181 (D.C. Cir. 2011) (appellee forfeited argument when its brief on appeal did not dispute appellant's point); *United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999) ("Even appellees waive arguments by failing to brief them"); *see also Calzone v. Summers*, 942 F.3d 415, 421 (8th Cir. 2019) (en banc) (citing favorably several cases where courts found appellees to have forfeited

arguments). The Court need not reach the question of conflict preemption, however, because the FMIA expressly preempts Plaintiffs' claims.

## CONCLUSION

Because all of Plaintiffs' causes of action seek to impose beef labeling standards in addition to and different from USDA's and to challenge product labels approved by USDA, those causes of action are expressly preempted by the FMIA. Defendants respectfully request that this Court reverse the District Court's preemption ruling and hold that Plaintiffs' remaining claims are preempted by the FMIA.

Appellate Case: 25-1986    Page: 30    Date Filed: 09/10/2025 Entry ID: 5556522

**FAEGRE DRINKER BIDDLE & REATH LLP**

By /s/ Tyler A. Young
_____

Aaron D. Van Oort
Tyler A. Young
90 South Seventh Street
2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: 612 766 8610
aaron.vanoort@faegredrinker.com
tyler.young@faegredrinker.com

Martin J. Demoret
801 Grand Avenue, Suite 3100
Des Moines, IA 50309
Telephone: 515 447 4709
martin.demoret@faegredrinker.com

*Attorneys for Defendants-Appellants JBS USA Food Company, Tyson Foods, Inc., Cargill Meat Solutions Corp., and National Beef Packing Company, LLC*

24

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 6,076 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Garamond typeface.

3.      This brief complies with Eighth Circuit Local Rule 28A(h) because the electronic version of this brief has been converted into PDF format, and has been scanned for viruses and has been found to be virus free.

*/s/ Tyler A. Young*
Tyler A. Young
Counsel for Defendants-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Tyler A. Young
Tyler A. Young
Counsel for Defendants-Appellants